IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| In re:<br><br>CCS ASSET MANAGEMENT, INC.<br><br>                              Debtors. | Case No. 21-10355-tmd<br><br>Chapter 11 |
| CCS ASSET MANAGEMENT, INC.,<br><br>                              Plaintiff,<br><br>v.<br><br>JOHN HOBERMAN, SUSAN HOBERMAN, and STRATA TRUST COMPANY,<br><br>                              Defendants. | Adv. Pro. No. 21-01030-tmd |

**CCS ASSET MANAGEMENT INC'S REPLY TO JOHN AND SUSAN HOBERMAN'S RESPONSE TO DEBTOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT QUIETING TITLE**

CCS Asset Management, Inc., as debtor and debtor-in-possession in the above-captioned bankruptcy case and plaintiff in the above-captioned Adversary Proceeding (the "Debtor"), hereby replies to *John and Susan Hoberman's Amended Response to Debtor's Motion for Summary Judgment and Counter-Motion for Summary Judgment Against Debtor and Supporting Brief* [Adv. Dkt. No. 29] (the "Amended Response") filed by John and Susan Hoberman (collectively, "Hoberman") as follows:

**Preliminary Statement**

1. Only three paragraphs of the Amended Response—26 through 29—address directly the single issue on which the Court has not abstained. Hoberman does not dispute that 4709 Incorporated's confirmed plan of reorganization (the "4709 Plan") and Bankruptcy Code § 1141(c) operated to void the asserted liens, asserting instead that (a) dismissal of 4709

1

Incorporated's bankruptcy case undid the 4709 Plan, revoked the discharge, and reinstated Hoberman's liens and (b) the Debtor is not able to assert rights under the 4709 Plan because 4709 Incorporated's breach of the Plan is imputed on the Debtor. Hoberman also argues that the Debtor should be estopped from asserting that Hoberman's liens are invalid.

2. Each of these arguments fails. Caselaw is unanimous that post-confirmation dismissal of a corporate chapter 11 case does not revoke discharge or the effects of confirmation. The authority cited by Hoberman do not suggest otherwise—*Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017), held that a structured dismissal could not violate the Bankruptcy Code's priority scheme and *In re Gamble*, No. 06-36485, 2007 WL 895809, (Bankr. S.D. Tex. Mar. 22, 2007), and *In re Day*, 292 B.R. 133 (Bankr. N.D. Tex. 2003) involved chapter 13 cases where no discharge had occurred. Nor does 4709 Incorporated's failure to perform under the 4709 Plan prevent operation of Bankruptcy Code § 1141 or the res judicata effect of the 4709 Plan. And Hoberman's estoppel argument is particularly deficient. The cases cited in the Amended Response do not address estoppel and the statements of Anthony Sheridan and CCS are factually different, there is no evidence or even *allegation* that Hoberman or anyone else relied on those representations, and prepetition statements of a debtor do not form a basis for estoppel for a debtor-in-possession exercising strong-arm powers under Bankruptcy Code § 544(a).

3. Ultimately, the undisputed facts show that the liens Hoberman asserted as the basis for secured claims in 4709 Incorporated's 2014 bankruptcy case were voided by the 4709 Plan. Hoberman certainly had *some* enforceable right with respect to the Cameron Road Property after the effective date of the 4709 Plan. Due to the Court's abstention, however, the nature of Hoberman's right—ability to obtain specific performance, equitable title, or something else—and whether that right remained enforceable on the Petition Date should be determined by the

appropriate state court in light of the abstention that Hoberman requested and the Court granted.

## Argument

4. Bankruptcy Code § 1141(c) sets out the general rule that upon confirmation of a chapter 11 plan of reorganization, all property of the bankruptcy estate vests in the reorganized debtor free and clear of all claims and interests. It provides:

> Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(c).[1]

5. The Fifth Circuit Court of Appeals has articulated four conditions that must be met for a lien to be voided under Bankruptcy Code § 1141(c): (1) the plan is confirmed; (2) the property that is subject to the lien must be dealt with by the plan;[2] (3) the lien holder must participate in the reorganization;[3] (4) the plan must not preserve the lien.[4] *In re Ahern Enterprises*, Inc., 507 F.3d

---

[1] Section 1141(d)(2) excepts individual debtors from discharge of debts that are non-dischargeable under Bankruptcy Code § 523. Section 1141(d)(3) provides that the confirmation of a plan does not discharge a debtor if (a) the plan provides for the liquidation of all or substantially all of the property of the estate; (b) the debtor does not engage in business after consummation of the plan; <u>and</u> (d) the debtor would not be granted a discharge under Bankruptcy Code § 727(a). 4709 Incorporated was not an individual (4709 Plan; Hoberman Answer ¶ 46) and Hoberman admits that the 4709 Plan did not provide for the liquidation of all or substantially all of 4709 Incorporated's assets (Hoberman Answer ¶ 54).

[2] A plan "deals with" property for purposes of Bankruptcy Code § 1141(c) "if there is a general reference in the plan that would encompass the property at issue." *In re Apex Long Term Acute Care - Katy, L.P.*, 599 B.R. 314, 321 (Bankr. S.D. Tex. 2019). The 4709 Incorporated Plan addressed the Cameron Road Property, defined as the "Meadowglen Shopping Center" or the "Property." 4709 Incorporated was required to transfer the Property to Hoberman on the effective date of the 4709 Plan by a deed-in-lieu of foreclosure. 4709 Plan § 6.05.01.

[3] Filing a proof of claim is generally sufficient for a secured creditor's participation for purposes of Bankruptcy Code § 1141(c). *In re Vitro Asset Corp.*, 539 B.R. 108, 119 (N.D. Tex. 2015), aff'd sub nom. *Matter of Vitro Asset Corp.*, 656 F. App'x 717 (5th Cir. 2016) (holding that filing two proofs of claim was sufficient under the test set forth in *Ahern*). In 4709 Incorporated's chapter 11 case, Hoberman filed two proofs of claim (Motion Exs. 15 and 16), purchased the claim of Pride of Austin reflected in a separate proof of claim (Motion Ex. 14), and voted in favor of the 4709 Plan (4709 Confirmation Order ¶ 10).

[4] Where the other factors are present, a plan must *expressly* preserve a lien for such lien to survive confirmation of a chapter 11 plan of reorganization. *See In re Ahern Enterprises, Inc.*, 507 F.3d 817, 824 (5th Cir. 2007) ("In general, a

817, 822 (5th Cir. 2007); *accord In re S. White Transp., Inc.*, 725 F.3d 494, 496 (5th Cir. 2013).

6. The Amended Response does not dispute that each of these elements have been admitted or established by conclusive evidence. Instead, Hoberman argues that (a) the dismissal of 4709 Incorporated's bankruptcy case reinstated Hoberman's liens, Amended Response ¶ 26-29; (b) 4709 Incorporated's breach under the 4709 Plan is imputed on the Debtor and prevents the Debtor from asserting claim preclusion, Amended Response ¶ 29; (c) the Debtor is estopped from asserting Hoberman's liens are invalid, Amended Response ¶ 34-37; and (d) matters unrelated to the effect of the 4709 Plan on Hoberman's asserted liens.

### A. Dismissal of 4709 Incorporated's Bankruptcy Case Did Not Undo Confirmation, Revoke 4709 Incorporated's Discharge, or Reinstate Liens Voided by Bankruptcy Code § 1141(c).

7. Courts have held that that dismissal of a chapter 11 plan does not revoke a confirmed plan or a discharge. *In re Space Bldg. Corp.*, 206 B.R. 269, 274 (D. Mass. 1996) (collecting cases). Both the confirmation order and the discharge remain in effect, "'without regard to whether the debtor pays according to the plan or not.'" *In re Depew*, 115 B.R. 965, 967 (Bankr. N.D. Ind. 1989) (quoting *In re N.S. Garrott & Sons*, 48 B.R. 13, 16 (Bankr. E.D. Ark. 1984)).

8. Bankruptcy Code § 1144 is "the exclusive means by which a plan can be revoked . . . ." *In re Logan Place Properties, Ltd.*, 327 B.R. 811, 814 (Bankr. S.D. Tex. 2005). The statute requires that a part in interest request revocation within 180 days after the confirmation order that the request be granted "if and only if such order was procured by fraud." 11 U.S.C. §

---

plan of reorganization 'provides otherwise' by expressly stating that the lien that is asserted remains on the property to which it is attached. . . . Ahern's plan did not expressly preserve Elixir's lien."); *see also In re* WorldCom, Inc., 382 B.R. 610, 622 (Bankr. S.D.N.Y. 2008), aff'd, No. 09 CIV. 9623 RJS, 2011 WL 1496378 (S.D.N.Y. Apr. 19, 2011) ("Courts have generally held that a phrase such as 'except as provided herein' means that for a lien to survive it must be expressly preserved."). Section 9.01 of the 4709 Plan provided that "[a]s of the Effective Date, the Reorganized Debtor shall be vested with all Property of the Estate, free and clear of all Liens, Claims and encumbrances except as expressly provided under the Plan." Sections 6.03 and 6.04 of the 4709 Plan expressly provided that holders of Class 3 and Class 4 claims would retain their liens, but did not do so for Class 5 claims held by Hoberman.

4

1144. This is the only mechanism to "unscramble the egg" post-confirmation. *In re Renaissance Radio, Inc.*, No. 03-33479-BJH, 2019 WL 1503787, at *9 (Bankr. N.D. Tex. Apr. 4, 2019).

9. The cases cited by Hoberman do not support a different conclusion. In *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017), the Supreme Court held that a structured dismissal could not violate the priority scheme set out in the Bankruptcy Code. As part of its reasoning, the Supreme Court provided an overview of the chapter 11 process:

> It is important to keep in mind that Chapter 11 foresees three possible outcomes. The first is a bankruptcy-court-confirmed plan. Such a plan may keep the business operating but, at the same time, help creditors by providing for payments, perhaps over time. See §§ 1123, 1129, 1141. The second possible outcome is conversion of the case to a Chapter 7 proceeding for liquidation of the business and a distribution of its remaining assets. §§ 1112(a), (b), 726. That conversion in effect confesses an inability to find a plan. The third possible outcome is dismissal of the Chapter 11 case. § 1112(b). A dismissal typically "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case"—in other words, it aims to return to the prepetition financial status quo. § 349(b)(3).

But it is undisputed that the 4709 Plan *was* confirmed. The effect of Bankruptcy Code § 1141(c), was to vest property of 4709 Incorporated's estate, including the Cameron Road Property, in 4709 Incorporated free and clear except as otherwise provided in the plan or confirmation order. Thus, the Cameron Road Property was not property of the estate when 4709 Incorporated's bankruptcy case was dismissed subject to being revested in some other entity.

10. *In re Gamble*, No. 06-36485, 2007 WL 895809, (Bankr. S.D. Tex. Mar. 22, 2007), and *In re Day*, 292 B.R. 133 (Bankr. N.D. Tex. 2003) involved chapter 13 cases. In *Gamble*, the issue before the court was whether a lien voided under Bankruptcy Code § 506(d) under a chapter 13 plan was reinstated upon dismissal. In *Day*, an undersecured creditor objected to confirmation of a chapter 13 plan that required the creditor to release its lien on the debtor's payment of the secured portion of its claim.

11. Chapter 13 debtors do not receive a discharge until all plan payments are completed, 11 U.S.C. § 1328, unlike corporate chapter 11 debtors that receive a discharge upon confirmation of a plan, 11 U.S.C. § 1141. Further, while Bankruptcy Code § 349(b)(1)(C) expressly provides that liens voided under Bankruptcy Code § 506(d) are reinstated, it does not provide so for liens voided by operation of Bankruptcy Code § 1141(c).[5]

12. This did not leave Hoberman without remedy for default under the 4709 Plan. Section 12.01 provided that in the event of default, creditors other than the State of Texas or Travis County "may exercise any rights granted to them under documents executed to implement the [4709] Plan or any rights available to such creditors under applicable non-bankruptcy law" and that "[i]n the absence of documents executed to implement the [4709] Plan, it may be enforced as a contract." When 4709 Incorporated failed to deliver a deed for the Cameron Road Property, Hoberman was, at a minimum, entitled to specific performance of section 6.05.01 of the 4709 Plan. If the 4709 Plan was sufficient for equitable title, an action for trespass to try title would have been successful. Hoberman chose to take neither action and has now sought and obtained abstention from this Court on these other actions.

**B. Hoberman's Argument That the Plan Is Not Enforceable Against Hoberman as a Contract Because 4709 Incorporated Failed to Perform is Inapposite.**

    *i. The Plan is Res Judicata with Respect to Hoberman's Interests in the Cameron Road Property.*

13. The Debtor seeks recognition of the effect of confirmation of the 4709 Plan with respect to the Cameron Road Property, not to enforce the 4709 Plan as a contract against Hoberman. *Cf. In re Frontier Ins. Grp., Inc.*, 585 B.R. 685, 693 (Bankr. S.D.N.Y. 2018), aff'd, 598

---

[5] The general rule is that a void lien remains a nullity unless a statute provides otherwise. *See Bitterroot Holdings, LLC v. Bank of New York Mellon*, No. 14-CV-804 (RCL), 2017 WL 10181041, at *12 (W.D. Tex. Aug. 4, 2017) ("A void lien is forever void. It is no more. It has ceased to be."). If Congress intended for **all** voided liens to be reinstated, it would have provided for such relief in Bankruptcy Code § 349(b)(1).

B.R. 87 (S.D.N.Y. 2019) ("The binding effect of a chapter 11 plan is in fact premised on statutory and common law claim preclusion."). Hoberman's argument that the Plan cannot be enforced because of 4709 Incorporated's breach misses the point.

14. The effect of a confirmed plan of reorganization is to replace the previous obligations of a debtor to creditors with those set out in the plan. *In re Pan Am. Gen. Hosp., LLC*, 385 B.R. 855, 865 (Bankr. W.D. Tex. 2008). This is more than just a contract; a confirmed plan is a final judgment with respect to these obligations. *Tr. v. Raleigh*, No. MO-11-CA-43, 2012 WL 12872412, at *3 (W.D. Tex. Apr. 9, 2012) (*Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1054 (5th Cir. 1987)). Res judicata applies.

15. The elements of res judicata in the Fifth Circuit are: (1) the parties must be identical or in privity; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits, and (4) the same cause of action must be involved in both actions. E.g., *Eubanks v. F.D.I.C.*, 977 F.2d 166, 169 (5th Cir. 1992). The Debtor is in privity of estate with 4709 Incorporated and Hoberman was a creditor in 4709 Incorporated's bankruptcy case that participated and even voted in support of the 4709 Plan. The 4709 Plan was confirmed by order of this Court and not appealed by Hoberman or any other party. And the 4709 Plan addressed 4709 Incorporated's obligations to Hoberman and Hoberman's liens against the Cameron Road Property under the same deeds of trust at issue here.

    *ii.    The Debtor is Not the Party that Breached the 4709 Plan.*

16. Hoberman's contention that the Debtor breached the 4709 Plan is puzzling. It is undisputed that 4709 Incorporated, through Selena Cash, executed the deed for the Cameron Road Property to the Debtor. Hoberman's position seems to be that every action involving a principal of a corporation imputes liability on that corporation.

17. Texas law does not provide for such a sweeping and automatic scheme of reverse

7

veil piercing and the authorities cited by Hoberman do not suggest otherwise. The question at issue in *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387 (Tex. 1997), was whether a vice-principal of a corporation committed gross negligence such that exemplary damages against the corporation were appropriate. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 253 (Tex. 2009), involved defamatory statements made by a corporation's general manager, comptroller, and used car sales manager. In both cases, the Texas Supreme Court considered whether the tortious acts could be considered direct acts of the corporation. Neither case stands for the proposition that every act by someone who is a vice-principal of a corporation imputes liability on legally and operationally distinct entity because they have the same management.

18. Moreover, neither the Debtor nor Anthony Sheridan caused 4709 Incorporated's failure to deliver to Hoberman a deed to the Cameron Road Property in December 2015. Delivery of a deed for the Cameron Road Property was what 4709 Incorporated was required to do under the 4709 Plan.

    **C. Neither Estoppel Does Not Apply Against the Debtor with Respect to the Validity of Hoberman's Liens.**

19. The Amended Response alleges that Anthony Sheridan argued to the Probate Court that it should deny Hoberman's motion for leave to pursue non-judicial foreclosure notwithstanding the appointment of a receiver because once the ownership dispute was resolved, "CCS will be able to pay off the Hoberman notes by refinancing the property." Amended Response ¶ 18. Further, the Response claims that the Debtor asserted in a motion to compel mediation in the Probate Litigation that third party lending existed that would permit the Debtor to "provide a payoff of the outstanding loan amounts to Hoberman and the Cameron Road Property's tax debts." Amended Response ¶ 20.

20. Neither of those statements was an acknowledgment with an implied promise to

pay Hoberman like in *Matherne v. Carre*, 7 S.W.3d 903 (Tex. App.—Beaumont 1999) cited in the Amended Response. In that case, the Texas appellate panel reasoned that the defendant acknowledged the existence of the debt and the amount of the loan balance in an "inventory and appraisement"[6] in a divorce action and the circumstances were such that plaintiff would reasonably understand that it would be communicated to the lienholder (the mother of the plaintiff's spouse) and relied upon by the lienholder. *Id.* at 907. The court held that the acknowledgement of the debt included an implied promise to pay and thus the statute of limitations did not apply. *Id.* Anthony Sheridan and the Debtor were seeking the opportunity to resolve the dispute with Hoberman, not expressly acknowledging Hoberman's right to payment.[7] Further, Hoberman provides no evidence or even allegation of any reliance on the representations and proceeded with an attempt at non-judicial foreclosure notwithstanding.

21.  *Republic Nat. Bank of Dallas v. Strealy*, 350 S.W.2d 914 (Tex. 1961), also cited in the Amended Response, involved a note that was missing material terms. Although the Texas Supreme Court held that the note was invalid, the underlying debt remained despite the statute of limitations because it was supported by letters written within the relevant statute of limitations. *Id.* at 920. But the issue did not involve resurrecting a void lien or other interest, as Hoberman claims

---

[6] An inventory and appraisement in a divorce proceeding "is a listing of all the assets and liabilities of the parties." § 18:53. Inventory and appraisement in divorce proceedings, 11A Tex. Prac., Texas Methods of Practice § 18:53 (3d ed.). This document is typically sworn to by the parties. *See* Tex. Fam. Code § 6.502 (authorizing entry of an order "requiring a sworn inventory and appraisement of the real and personal property owned or claimed by the parties and specifying the form, manner, and substance of the inventory and appraisal and list of debts and liabilities.").

[7] Tex. Civ. Prac. & Rem. Code § 16.065 provides that "[a]n acknowledgment of the justness of a claim that appears to be barred by limitations is not admissible in evidence to defeat the law of limitations if made after the time that the claim is due unless the acknowledgment is in writing and is signed by the party to be charged." Further, "[a]n acknowledgement must either evidence an express promise to pay the debt or an unequivocal acknowledgment of its justness from which it is said the law will imply a promise to pay it." *In re Vineyard Bay Dev. Co., Inc.*, 132 F.3d 269, 271 (5th Cir. 1998) (internal quotations omitted). Proposals to settle a disputed claim do not rise to the level of an acknowledgment. *See id; Discovery Grp., Inc. v. Kammen*, 2015 WL 7300690, at *6 (Tex. App. Nov. 19, 2015). Nor should vague expressions be tortured into acknowledgements or promises. *Metro. Cas. Ins. Co. of New York v. Davis*, 174 S.W.2d 84, 87 (Tex. Civ. App. 1943); *Miller v. Thomas*, 226 S.W.2d 149, 152 (Tex. Civ. App. 1949).

happened here. The case does not support Hoberman's position.

22. Moreover, even if Anthony Sheridan or the Debtor *had* acknowledged the debt, that acknowledgement would not be estoppel with respect to a hypothetical bona fide purchaser of real property in whose shoes the debtor stands as debtor-in-possession under Bankruptcy Code § 544(a). *In re Sullivan*, 448 B.R. 852, 858 (Bankr. N.D. Ga. 2010) ("Judicial estoppel is not available against a debtor in possession pursuing an avoidance action under § 544(a)."); *In re Homeplace Stores, Inc.*, 228 B.R. 88, 95 (Bankr. D. Del. 1998) ("[C]ourts have held that the defense of equitable estoppel is not available against debtors-in-possession when the defense would operate at the expense of the debtor's creditors."); *In re I.A. Durbin, Inc.*, 46 B.R. 595, 602 (Bankr. S.D. Fla. 1985) ("The defense of estoppel is not available against the Debtor-in-Possession proceeding under the strong-arm clause of 11 U.S.C. 544(a).") One of the purposes of giving a trustee or debtor in possession the ideal status is to prevent defenses like estoppel from applying to reduce funds available to creditors. *In re I.A. Durbin, Inc.*, 46 B.R. at 602.

**D. The Remaining Arguments Hoberman Presents in the Amended Response are Inapposite to the Sole Issue Decided**

23. Although the Debtor sought to have all matters regarding Hoberman's rights to the Cameron Road Property determined in this Adversary Proceeding, Hoberman filed a motion seeking mandatory and permissive abstention. The Court ruled, in no uncertain terms, that it will determine only the effect of the 4709 Plan on Hoberman's asserted liens and leave all other issues to be decided by the appropriate state court.

24. This should cut both ways. Hoberman's strained arguments regarding tolling, Tex. Civ. Prac. & Rem. Code § 16.069, and the MFS Agreement are in response to the limitations arguments the Debtor raised under Tex. Civ. Prac. & Rem. Code §§ 16.04, 16.25, and 16.035. If the Court is not determining the Debtor's arguments, it should not determine Hoberman's defenses.

## **Conclusion**

25. The 4709 Plan terminated Hoberman's liens against the Cameron Road Property that secured the debts of 4709 Incorporated. Hoberman may have had a right to compel specific performance under the 4709 Plan to receive a deed-in-lieu of foreclosure, equitable title, or some other right. However, the nature of that right and whether it is enforceable against the Debtor should be determined by the appropriate state court, consistent with this Court's ruling on Hoberman's request for abstention.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtor request that the Court grant partial summary judgment on the issue of Hoberman's asserted liens, and such other relief to which the Debtor is entitled.

Dated: October 29, 2021

**PARKINS LEE & RUBIO LLP**

*/s/ R. J. Shannon*
R.J. Shannon
TX Bar No. 24108062
Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002
Email: rshannon@parkinslee.com
Phone: 713-715-1660

*Counsel to CCS Asset Management, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2021, the forgoing document was served on the following parties (a) through the Court's CM/ECF System if registered to receive such service and (b) by U.S.P.S. first class mail, postage prepaid and/or email on the following parties:

David Brenner
BURNS ANDERSON JURY & BRENNER, L.L.P.
P. O. Box 26300
Austin, Texas 78755-0300
dbrenner@bajb.com
[Via CM/ECF and Email]

Lynn Hamilton Butler
HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
lynn.butler@huschblackwell.com
[Via U.S.P.S. First Class Mail and Email]

Anthony Icenogle
ICENOGLE & BOGGINS, PLLC
6907 Capital of Texas Hwy., Suite 220
Austin, Texas 78731
anthony@idenoglefirm.com
[Via U.S.P.S. First Class Mail and Email]

Kemp Gorthy
THE GORTHEY LAW FIRM, PLLC
604 West 12th Street
Austin, Texas 78701
kemp@gortheylaw.com
[Via U.S.P.S. First Class Mail and Email]

C. Daniel Roberts
C. DANIEL ROBERTS, P.C.
1602 E. Cesar Chavez
Austin, Texas 78702
droberts@cdrlaw.net
[Via U.S.P.S. First Class Mail and Email]

Strata Trust Company
600 Congress Avenue, Suite 600
Austin, Texas 78701
[Via U.S.P.S. First Class Mail]

*/s/R. J. Shannon*
R. J. Shannon